UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

In the Matter of GARY GILLARD,                           1:13-MC-0013 (LEK)

                                Plaintiff,

_____

### DECISION and ORDER

## I.    INTRODUCTION

Plaintiff Gary Gillard ("Plaintiff") is currently incarcerated and has been a frequent *pro se* litigant in this District.  On January 7, 2013, the Clerk of the Court received a Letter from Plaintiff dated January 2, 2013, expressing concern about the handling of his inmate account.  Dkt. No. 1 ("Letter").  The Clerk of the Court docketed the Letter as a "Letter Motion" in two of Plaintiff's other open cases.  Gillard v. Jarvis, No. 9:11-CV-1021 (LEK/ATB) ("Jarvis"), Dkt. No. 37; Gillard v. Rovelli, No. 9:12-CV-0083 (LEK/CFH) ("Rovelli"), Dkt. No. 60.  Defendants in both cases ("the Rovelli Defendants" and "the Jarvis Defendants," respectively) each filed Responses in opposition to Plaintiff's Letter.  Jarvis, Dkt. No. 38; Rovelli, Dkt. No. 60.  The two Responses were both filed through the Office of the Attorney General of the State of New York ("Attorney General") and are substantively identical.  Compare Jarvis, Dkt. No. 38, with Rovelli, Dkt. No. 60.

On February 5, 2013, the Court directed the Clerk of the Court to strike the Letter from the dockets in Jarvis and Rovelli and file it as the operative document in the instant case so that the Court might more effectively address the issues raised therein.  Jarvis, Text Order dated February 5, 2013; Rovelli, Text Order dated February 5, 2013.  The Clerk of the Court has also docketed the Attorney General's Response in this case.  Dkt. No. 2 ("Response").

For the following reasons, the Court grants Plaintiff's request to have a portion of his funds returned to his inmate account.

## II.       BACKGROUND

In his Letter, Plaintiff argues that money has been improperly taken from his inmate account and used to pay court filing fees without his permission and "IN VIOLATION OF NEW YORK STATE DEPARTMENT OF CORRECTION POLICY AND IN VIOLATION OF A COURT ORDER." Letter at 2. Plaintiff contends that: (1) he has been granted *in forma pauperis* status; (2) federal filing fees can only be deducted one at a time at the rate of 20 percent of institutional pay and money deposited from outside the facility; yet (3) upon the deposit of a check for $1804.85 in his account, prison personnel took $1400 to pay all of Plaintiff's filing fees; and (4) this $1400 payment was made without Plaintiff's permission and in contravention of applicable prison policies. Id. Plaintiff requests that the Court return $700 to Plaintiff and use the other $700 to pay the filing fees in two of Plaintiff's other cases. Id.

In his Response, the Attorney General argues that the Department of Corrections and Community Supervision ("DOCCS") acted in accordance with Directive 2788, which provides that encumbrances on an inmate's account for court filing fees are paid off at a rate of 20 percent of receipts. Response at 1. He contends that "less than 20 percent of the $1,804.85 that was deposited into [P]laintiff's inmate account was used to satisfy, in whole or in part, each of the balances due for filing fees in this and five other cases." Id. at 2. Because the fees were paid off sequentially, DOCCS acted pursuant to their Directive while still depleting the funds in Plaintiff's account.

The Attorney General submits as a part of his Response an Affidavit from Christine M. Parameter ("Parameter"), a DOCCS employee who works in the business office of the Attica Correctional Facility. Id. at 3-6. Parameter states that on November 5, 2012, "in accordance with subdivision VII(b)(2) of DOCCS Directive 2788": (1) "the business office used less than 20 percent of

2

the $1,804.85 to satisfy the $140.96 balance due for the filing fee in case number 9:09-CV-0945"; (2) "the business office used less than 20 percent of the $1,804.85 to satisfy the $320.59 balance due for the filing fee in case number 9:09-CV-0860"; (3) "the business office used less than 20 percent of the $1,804.85 to satisfy the $349.62 balance due for the filing fee in case number 9:11-CV-1021"; (4) "the business office used less than 20 percent of the $1,804.85 to satisfy the $350 balance due for the filing fee in case number 9:12-CV-0083"; (5) "the business office used less than 20 percent of the $1,804.85 to satisfy the $314.66 balance due for the filing fee in case number 12-CV-0335"; (6) "the business office applied $329.02 of the $1,804.85 (i.e., less than 20 percent of the $1,804.85) towards the $347.55 balance due for the filing fee in case number 12-CV-0428S (WDNY)." Id. at 4-6.

### III.    LEGAL STANDARD

Under the Prison Litigation Reform Act ("PLRA"):

(1) . . . [I]f a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee.  The court shall assess and, when funds exist, collect, as partial payment of any court fees required by law, an initial partial filing fee of 20 percent . . . .

(2) After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

28 U.S.C. § 1915(b)(1)-(2).  However, "[o]n the question whether multiple encumbrances should be collected sequentially or simultaneously, the text and structure of § 1915 fail to provide a definitive answer."  Whitfield v. Scully, 241 F.3d 264, 276 (2d Cir. 2001).

As a result, disagreement persists among the circuits as to how filing fees should be collected when a litigant with *in forma pauperis* status owes money on multiple cases.  See id. at 276-77; Hendon v. Ramsey, 478 F. Supp. 2d 1214, 1217-20 (S. D. Cal. 2007) (collecting cases and tracing the

circuit split).  Some circuits have adopted a "per case" or "cumulative" rule, whereby a prisoner plaintiff must pay 20 percent of her monthly income *per case filed*.  See, e.g., Christensen v. Big Horn Cnty. Bd. of Cnty. Com'rs, 374 F. App'x 821 (10th Cir. 2010); Atchison v. Collins, 288 F.3d 177 (5th Cir. 2002); Lefkowitz v. Citi-Equity Group, Inc., 146 F.3d 609 (8th Cir. 1998); Newlin v. Helman, 123 F.3d 429, 436 (7th Cir. 1997), overruled in part on other grounds by Lee v. Clinton, 209 F.3d 1025 (7th Cir. 2000).  The Second Circuit, on the other hand, has clearly rejected the "per case" rule and has instead adopted a "per prisoner" or "sequential" rule.  Whitfield, 241 F.3d at 277.  Under this rule, the Second Circuit "conclude[d] that 28 U.S.C. § 1915(b)(2) generally requires the recoupment of multiple encumbrances in sequential fashion at a constant rate of 20 percent of monthly receipts to the prisoner's account."  Id.  Even if a Plaintiff had fees in multiple cases pending, § 1915 provides a "uniform ceiling [of 20 percent], in a compromise between the imperative to collect fees . . . and the right of prisoners to effective access to the courts."  Id. at 276 (citing Tucker v. Branker, 142 F.3d 1294, 1298 (D.C. Cir. 1998) ("In sum, the payment requirement of the PLRA never exacts more than 20% of an indigent prisoner's assets or income.")).

In reaching its decision in Whitfield, the Second Circuit emphasized its concern that "the simultaneous collection of multiple encumbrances could potentially expose 100 percent of a prisoner's income to recoupment."  Id. at 276.  Such a scenario "could pose a serious constitutional quandary as to whether an unreasonable burden had been placed on the prisoner's right of meaningful access to the courts, especially with respect to the collection of filing fees."  Id. (citing Tucker, 142 F.3d at 1297-98). "Although the resulting delay in payments [from a system of sequential rather than cumulative recoupment] may create less of an incentive for prisoners not to litigate, that alternative is far preferable to adopting a construction of the statute that could render it unconstitutional."  Id. at 277.

4

**IV.    DISCUSSION**

Based on the allegations contained in Plaintiff's Letter and the description of events provided by Parameter in her Affidavit, the Court concludes that DOCCS's seizure of Plaintiff's funds falls well afoul of the clearly-drawn rule in <u>Whitfield</u>.  In this case, on a single day – November 5, 2012 – DOCCS removed the vast majority of the funds from Plaintiff's account and used them to fulfill his financial obligations relating to six cases.  There can be no question that Plaintiff ultimately owes this money to DOCCS.  However, there can also be no question that an ultimate financial obligation does not trump the Second Circuit's reading of a federal statute.  Indeed, in announcing its rule, the Second Circuit explicitly recognized that sequential payment would create a delay in the satisfaction of filing fees, but that the cost of such a delay was outweighed by the benefit of assuring that prisoner plaintiffs were able to exercise their constitutional rights and access the courts.  <u>See</u> <u>Whitfield</u>, 241 F.3d at 277.

Under the rule in <u>Whitfield</u>, DOCCS should have withdrawn 20 percent of Plaintiff's account *per month* to satisfy his obligations.  The holding in <u>Whitfield</u> is crystal clear that 20 percent of an inmate's income is a "ceiling" that cannot be overcome by applying the 20 percent on a *per case*, rather than *per prisoner*, basis.  <u>Id.</u> at 276 (rejecting the Seventh Circuit rule that "[a] prisoner who files one suit remits 20 percent of income to his prison trust account; a suit and an appeal then must commit 40 percent, and so on." (quoting <u>Newlin</u>, 123 F.3d at 436 )).

The procedure applied by DOCCS in this case, as laid out in Parameter's Affidavit and as reflected in the exhibits presented by Plaintiff, effectively adopted the cumulative or per case method.  While the Court notes that Parameter frames the withdrawals as occurring sequentially, the Court concludes that the payments can only be viewed as sequential if subjected to a hypertechnical reading.  Certainly, DOCCS may not have physically withdrawn the money for each account in the same instant,

but that such withdrawal was literally sequential and not cumulative amounts to a distinction without a difference.  Given that the Second Circuit explicitly identified the concern for an inmate's account being drained in short order as the basis for its interpretation of § 1915, the mere itemization of numerous withdrawals amounting to well more than 20 percent of Plaintiff's income clearly fails to satisfy the Whitfield rule.  The Court therefore concludes that funds must be returned to Plaintiff's inmate account.

V.      **CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that the Clerk of the Court return to Plaintiff's inmate account the withdrawn sum of $1400 less the amount owed by Plaintiff on the cases Gillard v. Smith, No. 9:09-CV-0945 (GLS/ATB), and Gillard v. Rovelli, No. 9:09-CV-0860 (NAM/TWD) and any other amount that may be properly withdrawn in accordance with this Decision and Order under the 20 percent, per individual, per month formula; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order upon Plaintiff; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order on Brian Fischer, DOCCS Commissioner; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order on the New York State Attorney General.

**IT IS SO ORDERED**.

DATED:      February 07, 2013
            Albany, New York

Lawrence E. Kahn
U.S. District Judge